UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| BLANCA GOMEZ and JOAN WAGNER-BARNETT,      )<br>         Plaintiffs,      )<br>                    )<br>    vs.               )<br>                    )<br>ST. VINCENT HEALTH, INC.,    )<br>         Defendant.    )    | 1:08-cv-153-SEB-DML |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

During 2004, Defendant St. Vincent Health, Inc. ("St. Vincent") became the plan administrator for the group health plans in place at numerous hospital and medical facilities in the St. Vincent Health System.  Plaintiffs Blanca Gomez and Joan Wagner-Barnett both worked at one of St. Vincent's hospitals until their employment concluded at the end of November 2004.  It is undisputed that after ending their employment with St. Vincent neither plaintiff received a timely notification of her rights under the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), which notice is required by 29 U.S.C. § 1166.  Plaintiffs bring this action seeking an award of "equitable damages" and a discretionary administrative penalty, pursuant to 29 U.S.C. § 1132(c)(1). St. Vincent maintains that these plaintiffs' circumstances do not warrant an award of any penalties or damages.  In this entry, we address the parties' cross-motions for summary judgment.

## *FACTUAL BACKGROUND*

### Blanca Gomez

Blanca Gomez worked for St. Vincent Carmel Hospital as a housekeeper for slightly more than a year, her last day being November 29, 2004.  While employed she and her husband were enrolled in the group health and dental benefits plans.  She remained insured through December 31, 2004 and, after her employment ended with St. Vincent, the provisions of COBRA entitled her to enroll in continued group coverage for a period of 18 months, so long as she paid all premiums due for the coverage.  It is undisputed that Gomez did not receive a timely notification of her rights as required by COBRA.[1]  St. Vincent did send her a notice of her COBRA rights in  June 2008, and at that time offered to provide her with retroactive coverage and to work out a payment schedule for the premium costs, if she wished to obtain that coverage.  Ms. Gomez did not respond to the notice and never contacted St. Vincent after the conclusion of her employment regarding the continuation of her health and dental benefits.

Had Ms. Gomez received notice of her COBRA rights immediately following the end of her employment, she would have been informed that her premium to enroll in

---

[1]St. Vincent claims that as a result of an audit of COBRA notifications, it sent belated COBRA rights notification letters to both Ms. Gomez and Ms. Wagner-Barnett in June of 2006 and the plaintiffs don't deny that those letters were sent, though they are unsure when or if they received them .  However, there is no question that these notification letters were untimely and would not have affected the plaintiffs circumstances during the eighteen month benefit extension period..

continued coverage was $304.10 per month for health benefits and $35.54 per month for dental benefits.[2]  She testified at her deposition that she would not have sought COBRA coverage had she been timely notified of her rights because she would not have been able to afford the premiums.  Although she did not retain any health coverage following her departure from St. Vincent, the evidence reveals that Ms. Gomez received free medical care under an indigent care program at Riverview Hospital during the eighteen month period that COBRA would have allowed her to continue her coverage through the St. Vincent group plan.  She has provided documentation showing that she incurred an out-of-pocket medical expense of $10.99 for a drug prescription during the eighteen month time period; no other medical expenses have been substantiated.

### Joan Wagner-Barnett

November 28, 2004, was Joan Wagner-Barnett's last day of work as a registered nurse at St. Vincent Hospital in Indianapolis.  She did not receive a  notification of her right to enroll in continued group coverage within the fourteen day period COBRA provides the employer to issue such notice.  While employed at the hospital, Ms. Wagner-Barnett was enrolled in the health, dental and vision benefit plans offered to employees. As with Ms. Gomez, St. Vincent sent Ms. Wagner-Barnett a letter in June 2008 extending

---

[2]Ms. Gomez and her husband were separated and going through a divorce at the time she left St. Vincent's employ.  She states that had she sought continued health coverage at the time she left St. Vincent's employ, it would have been only for herself.

to her the opportunity to enroll retroactively in the health, dental and vision coverages and offering to create a payment plan to assist her in paying the premiums, if she elected to do so.  Ms. Wagner-Barnett did not choose to enroll retroactively in any of the COBRA extended coverages when given this opportunity, nor did she at any time communicate a desire to pursue extended insurance coverage after leaving St. Vincent's employ, though she was familiar with her COBRA rights from  notices she had received from other employers in the past.

Had she received a timely COBRA notification, Ms. Wagner-Barnett states that she would have taken advantage of the offer and paid the premiums to enroll in the extended coverages.  The rate of those premiums would have been $304.10 per month for medical coverage, $33.54 per month for dental and $7.98 per month for vision coverage. She went approximately one month without insurance, before she qualified for benefits under her new employer's plan.  During that one month, she paid approximately $700 for her monthly prescription drugs, primarily because of one particularly expensive prescription drug.  She had other out-of-pocket vision and dental expenses during the eighteen month period when she would have been eligible for COBRA coverage, but could not recall whether she had vision and dental insurance through her new employer at that time.  She admits that once she was eligible for insurance with her new employer, she would not have continued to pay for the COBRA health coverage from St. Vincent.

**Previous COBRA Litigation Against St. Vincent**

This lawsuit was filed as a direct result of a solicitation sent to these plaintiffs by their legal counsel, Ronald Weldy, following counsel's unsuccessful attempt to recover damages and penalties from St. Vincent on behalf of two other former St. Vincent employees who also did not receive COBRA notification letters when they left St. Vincent's employ during the same approximate time period. *See Brown-Pfifer v. St. Vincent Health, Inc.,* 2007 WL 2757264. In the previous litigation, counsel sought to have a class certified claiming that there were numerous employees who did not receive COBRA notices during a time period when St. Vincent was consolidating its third-party handling of the COBRA notification for all of its 15 affiliated medical facilities. Class certification was denied in that case and summary judgment was awarded to St. Vincent on the claims of the two named plaintiffs because, in part, they had no actual damages and were not prejudiced by their failure to receive COBRA notices. In addition, the Court found that the plaintiffs in that litigation had offered no evidence of bad faith or gross negligence on the part of St. Vincent that might provide a basis for imposing an administrative penalty.

During the course of discovery in the *Brown-Pfifer* case, plaintiffs obtained information regarding more than 1,500 St. Vincent employees who had "qualifying events" occurring from May 2004 through the end of January 2006, which triggered a COBRA notification requirement. Based on that information, Mr. Weldy identified

5

numerous individuals who failed to receive timely notices.  Following the dismissal of the

*Brown-Pfifer* case, based on the discovery information gleaned from that case, Mr. Weldy

contacted other former St. Vincent employees whom he believed had not received timely

COBRA notices following a qualifying event and informed them of his belief that they

had claims against St. Vincent on which he would like to represent them.  Ms. Gomez and

Ms. Wagner-Barnett responded to Mr. Weldy's solicitation authorizing him to file this

lawsuit on their behalf.

## *DISCUSSION*

A failure to provide timely COBRA coverage notification is actionable under

Section 502 of ERISA,  29 U.S.C. § 1132.  In addition to recovering for actual losses, a

plan participant or beneficiary may also seek an award of up to $110-per-day reflecting

the period of the delay in providing the required notice.  29 U.S.C. § 1132(c)(1); 29

C.F.R. § 2575.502c-1.  Whether imposition of a daily penalty is appropriate is a matter

entrusted to the Court's discretion.  Ms. Gomez has shown no basis for an award of actual

damages in this case but nonetheless requests an award of the maximum $110-per-day

penalty for the delay she encountered in receiving the required notice.  In addition to a

similar request for an award of the maximum administrative penalty, Ms. Wagner-Barnett

claims that she actually incurred out-of-pocket medical expenses as a result of St.

Vincent's admitted COBRA violation and, therefore, seeks repayment of those additional

out-of-pocket expenses as well.

The factual distinction between Ms. Wagner-Barnett's case and the case against St.

Vincent in *Brown-Pfifer* is that Ms. Wagner-Barnett has offered evidence that she

incurred medical expenses which would have been covered had she been prompted by a

notification letter to enroll in the extended health coverage available through St. Vincent.

But Ms. Gomez's circumstances are no different than the two plaintiffs in *Brown-Pfifer*

and no evidence has been proffered by either plaintiff to establish bad faith or gross

negligence on the part of St. Vincent justifying an administrative penalty.[3]

As noted in the *Brown-Pfifer* litigation, the Seventh Circuit has not addressed

directly the issue of ERISA Section 502 penalty awards for failure to provide timely

COBRA notifications, but one of our  sister courts with this circuit has done so, and we

share the view adopted there, namely, that it is unnecessary to find that a plaintiff  was

prejudiced in order to award a discretionary daily penalty.  *See Fenner v. Favorite Brand*

---

[3]Plaintiffs contend that the factual circumstances provide three reasons for the Court to award administrative penalties: (1) St. Vincent did not have an oversight system as required by law; (2) it did not have an effective audit system in place; and, (3) it had sufficient resources to have a system which ensured compliance with COBRA but did not engage one and therefore acted in bad faith.

While ERISA mandates that an employer comply with COBRA notification obligations, nothing in the Act requires St. Vincent or any employer to have an oversight system in place.  St. Vincent did have procedures in place at all its facilities for notifying third-party vendors of qualifying events, which were supposed to cause the notices to be sent.  Indeed, St. Vincent's outside accountants performed sampling audits in 2004 and 2005 to help ensure that it complied with its COBRA obligations, but those samples did not catch any of the COBRA notification failures.  The lack of bad faith on the part of St. Vincent is further exemplified by its offer to allow both Ms. Gomez and Ms. Wagner-Barnett to utilize hindsight to determine if  it made financial sense for them to have the extended COBRA benefits during the applicable time period and, if so, to allow them to pay back the necessary premiums to obtain that retroactive coverage through a payment plan.

*International, Inc.*, 25 F.Supp.2d 870, 875 (N.D.Ill. 1998).  Nevertheless, prejudice is an

important factor in a court's discretionary penalty considerations, along with assessing

any bad faith, gross negligence or ill intent associated with the employer's delay in

providing the COBRA notification.  *See* Ira M. Golub & Roberta K. Chevlowe, *2010*

*COBRA Handbook* § 9.04[A] (listing decisions from numerous federal trial courts and

noting that prejudice or actual damages, along with bad faith, unanswered requests and

intentional delay are typically important factors a court considers in reaching a

determination on statutory penalty awards).  Based on our consideration of these factors

and the circumstances surrounding St. Vincent's efforts to centralize aspects of its

benefits administration for the thousands of employees managed by its hospital system,

we find no persuasive grounds to justify imposing the discretionary daily penalty as a

sanction for the untimely notice from St. Vincent to either plaintiff.

That leaves the issue of Ms. Wagner-Barnett's entitlement to recover for her out-

of-pocket losses.  St. Vincent contends that she is entitled to no award, pointing to a lack

of receipts and that, at least with respect to the dental and vision costs she incurred, she

does not ever recall whether she was insured under her new employer's plan during that

time period, admitting that she would have dropped COBRA coverage once she was

enrolled in her new employer's plan.  Indeed, Ms. Wagner-Barnett's failure to recall

specific times when she had dental or vision coverage combined with the lack of evidence

regarding the co-payments and deductibles associated with these ancillary coverages

leaves the court with nothing beyond mere speculation to establish an amount that would properly compensate her for the dental or vision bills she allegedly paid in late 2005. Accordingly, no award of this nature is appropriate.

However, regarding her health and prescription coverage, we are on firmer footing. Ms. Wagner-Barnett testified that she specifically recalls having to pay one monthly prescription bill before she was able to obtain coverage through her new employer's plan; that monthly bill was something in excess of $700. Not surprisingly, Ms. Wagner-Barnett did not retain a receipt from that purchase, but we see no reason to doubt her testimony. The modesty of her request actually enhances its credibility.

Congress enacted the disclosure provisions of ERISA so that individual participants would know exactly where they stand with respect to their benefit plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989). Pursuant to this policy, employees are entitled to access continuous medical coverage between jobs and be fully informed of their options when their coverage with their employer ends. When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts tend to interpret ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to the medical expenses incurred minus any deductibles and premiums that the beneficiary would have had to pay for COBRA coverage. *See Sonnichsen v. Aries Marine Corp.,* 673 F.Supp.2d 466, 474 (W.D.La.. 2009); *Miles-Hickman v. David Powers Homes, Inc*., 589 F.Supp.2d 849, 882

(S.D.Tex.,2008);  *Fisher v. Trutech, Inc.*, 2006 WL 3791977, at *3 (M.D.Ga.2006);

*Chenoweth v. Wal-Mart Stores, Inc.*, 159 F.Supp.2d 1032, 1042 (S.D.Ohio 2001);

*Hamilton v. Mecca, Inc*., 930 F.Supp. 1540, 1555 n. 24 (S.D.Ga.1996).  We shall adopt

this approach here in requiring St. Vincent to reimburse the out-of-pocket expenses

incurred by Ms. Wagner-Barnett.

The evidence establishes that St. Vincent maintained Ms. Wagner-Barnett's

coverage through the end of 2004 and that Ms. Wagner-Barnett secured coverage under a

new plan beginning on February 1, 2005.  That leaves one month during which Ms.

Wagner-Barnett could have paid $304 to continue her coverage and did pay $700 (or

thereabouts) for her monthly prescription medication, which would have otherwise been

covered by the insurance.  Therefore, she is entitled to recover $396 which represents the

difference between what she paid for the prescription and what she would have paid had

she continued her COBRA coverage for that month.

### *CONCLUSION*

For the reasons discussed in this entry, Defendant's Motion for Summary

Judgment (Doc. #83) is GRANTED with respect to plaintiff Blanca Gomez and DENIED

IN PART with respect to plaintiff Joan Wagner-Barnett.  Plaintiff's Cross-motion for

Summary Judgment (Doc. #105) is DENIED with respect to plaintiff Blanca Gomez and

GRANTED IN PART with respect to plaintiff Joan Wagner-Barnett, who shall receive an

award of damages in the amount of $396, payable by St. Vincent.  A separate judgment

shall issue accordingly.

     IT IS SO ORDERED.


Date:   05/06/2010

                                              SARAH EVANS BARKER, JUDGE
                                            United States District Court
                                            Southern District of Indiana


Distribution to:

John Patrick Ryan Jr.
HALL RENDER KILLIAN HEATH &
LYMAN
jpryan@hallrender.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com



Craig Warner Wiley
HALL RENDER KILLIAN HEATH &
LYMAN
cwiley@hallrender.com

Craig M. Williams
HALL RENDER KILLIAN HEATH &
LYMAN
cwilliams@HallRender.com